LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MARY MANUKYAN (State Bar No. 334998)
mmanukyan@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Plaintiff
JONATHAN DESTLER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JONATHAN DESTLER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, ,<br>and DOES 1 through 10,<br><br>　　　　　Defendants. | Case No:<br><br>**COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE FEDERAL TORT CLAIMS ACT ("FTCA")** |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

Plaintiff Jonathan Destler, an individual, brings this claim for relief against the United States of America as follows:

**INTRODUCTION**

1.      Plaintiff Jonathan Destler ("Destler") brings this action pursuant to the Federal Torts Claim Act ("FTCA") against the United States for malicious prosecution arising from United States v. Stephens et al., 22-CR-2701 BAS (the "Criminal Action"), filed in the United States District Court for the Southern District of California.

2.      The Criminal Action was initiated and pursued by federal agents from the FBI's San Diego Field Office, who fabricated evidence, falsely accused Destler of conspiracy and securities fraud, and instigated a prosecution based on fraud and deceit. The prosecution of Destler—spearheaded by Special Agent Jeremy Tarwater ("Tarwater")—was a manufactured scheme to secure a high-profile conviction at the expense of Destler's liberty, reputation and livelihood.

3.      After enduring more than two years of a wrongful prosecution, Destler was fully exonerated when the trial judge dismissing his case stated, "I don't see how any rational juror could have found beyond a reasonable doubt, based on the evidence adduced during the trial, that Mr. Destler was guilty of securities fraud." (Ex. 1 (Transcript of Rule 29 hearing, 9:8-10).)

4.      The indictment leading up to the Criminal Action was based on false and fabricated evidence, as detailed below.  The Criminal Action case should never have been brought. The investigation was flawed, mishandled and premised on lies from the outset. The grand jury indictment (the "Indictment") was procured through deceit.

5.      The Indictment alleged that Destler, and his co-defendants, Donald Danks ("Danks"), Robert Lazerus ("Lazerus"), and others conspired in a fraudulent "pump and dump" securities scheme to artificially inflate the share price of Loop Industries ("Loop") so they could sell their shares at inflated prices and reap profits

2

from the scheme. (Ex. 2 (Indictment) ¶¶ 11, 18, 20.)

6.      The Indictment described the "pump and dump" scheme as "effect[ing] the artificial inflation in a stock's share price by, among other things, issuing news press releases and/or promotional materials regarding the company and its stock— often containing false, misleading, or exaggerated information—and/or by engaging in manipulative trading of the stock to affect its price and generate the appearance of demand for the shares." (*Id*. ¶ 11.)

7.      A fatal flaw in the investigation, Indictment, and subsequent prosecution was the complete lack of evidence that Destler engaged in any "pumping" or "dumping"—the essential elements of the alleged scheme. Other flaws included the false allegation of a victim, where there was none, and the claim of a conspiracy that did not exist.

8.      Tarwater knowingly and intentionally presented material misrepresentations and omissions to federal prosecutors, and caused material misrepresentations and omissions to be presented to the grand jury, manufacturing probable cause where none existed. Such misrepresentations included:

- Falsely portraying an "elderly investor" as a "victim" of the scheme, despite the fact that he profited in excess of $3 million from investing in Loop stock and was, in fact, an experienced and sophisticated investor.

- Alleging that Destler artificially "pumped" Loop's stock price despite there being no evidence that he ever disseminated false or misleading information to anyone, was not an insider and had no access or ability to do so.

- Accusing Destler of profiting by selling his shares at their peak when, in fact, he held almost all of his shares for over seven years, sold none at their peak and was, in effect, a long-term holder, not a seller.

- Asserting that Destler underreported his shares to his broker to evade disclosing that he owned 5% or more of Loop's stock, despite possessing records of his limited public and private sales confirming his reporting was accurate.

- Claiming that Destler conspired to take Loop public through a reverse merger to facilitate the fraud scheme, whereas Destler never met, spoke

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")

to, or even heard of the alleged co-conspirator—an FBI cooperating witness from an unrelated case.

9.    Despite having full access to Destler's trading and bank records and those of the supposed "victim," Tarwater deliberately and brazenly ignored this information, motivated by ambition to advance his career through a high-profile securities and conspiracy fraud case.

10.    Over the course of a more than two-year investigation, the FBI failed to unearth a single piece of evidence that Destler engaged in any wrongdoing. No evidence showed that he made or conspired to make false statements, engaged in manipulative trading, or wrongly profited from selling his Loop shares. Tarwater and the FBI knew this because they had access to, and had in their possession, all the trading records and other relevant documents in the case.

11.    The Government proceeded to trial against Destler and his co-defendants. The jury rejected the prosecution's case, with the majority of jurors agreeing there was insufficient evidence to convict, resulting in a hung jury.

12.    After the jury hung, Destler filed a Rule 29 motion for judgment of acquittal based on the Government's failure to prove its case. On December 2, 2024, the motion was granted. All charges against Destler were dismissed with prejudice. (Ex. 3 (Rule 29 Order).)

13.    In granting the Rule 29 motion, the trial Judge found that the Government failed to present sufficient evidence to sustain the securities fraud and conspiracy charges against Destler, concluding that no rational juror could have found him guilty beyond a reasonable doubt. The Judge described the Government's case as being "all over the place" and admonished the government for "fail[ing] to prove that any actions [Destler] took were for the wrongful purpose of defrauding or deceiving anyone." (Ex. 1. 8:15-16; 9:13-16.)

14.    That Destler was forced to endure more than two years of wrongful prosecution, premised on a deliberate attempt to deceive the courts, before finally

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

4

being exonerated is a travesty. As a result of this malicious prosecution, Destler has suffered severe financial, reputational and emotional harm.

15. The Indictment disrupted Destler's work and harmed his reputation. Clients, colleagues, and investors distanced themselves. His ability to secure investments, including the completion of an initial public offering (IPO) for a promising technology company he founded and built, to maintain professional relationships, and to cultivate business ventures was damaged, leading to substantial financial losses and long-term career harm.

16. Beyond the economic toll, Destler endured immense emotional distress that has also affected his wife and two daughters, public humiliation, and the erosion of a professional career and reputation that took 30 years of hard work to build. These harms persist even after his exoneration.

17. Through this lawsuit, Destler seeks to hold the United States and Special Agent Tarwater accountable for their egregious abuse of power. Destler seeks damages for the harm inflicted upon him.

## THE PARTIES

### A. Jonathan Destler

18. Plaintiff Destler is an entrepreneur, investor and business strategist with over 25 years of experience in corporate finance, corporate development, capital formation and financial communications. He is the founder and CEO of Opti-Harvest, Inc. ("Opti-Harvest"), an agricultural technology company that develops and markets climate-smart products that help growers increase production and optimize land, labor and water resources.

19. Destler was an early investor in Loop, a company dedicated to sustainable polyethylene terephthalate (PET) plastic and polyester fiber production and recycling. He never held a position as an officer, director, manager, board member or employee of the company.

20. Destler has held senior executive positions at prominent global

5

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

communications firms, including Interpublic Group. Destler attended Columbia University, Boston University and The New School for Social Research, where he studied psychology. He has a life-long passion for science, innovation and entrepreneurship.

21. Beyond his professional endeavors, Destler is currently an active volunteer at The Urban Community Action Network (U.C.A.N.), a non-profit organization, based in Los Angeles dedicated to empowering community members, particularly those who are formerly incarcerated or recovering from substance use disorders, to lead fulfilling lives.

22. At all relevant times, Destler was, and is, a citizen of the United States, and a resident of Los Angeles, California, where he resides with his wife and daughters.

### B. The United States

23. Defendant United States is a proper defendant under the FTCA for the actions of its employees, including the FBI. Tarwater is a Special Agent with the FBI assigned to the San Diego Field Office. Tarwater served as the lead investigator in the Criminal Action. He has been employed by the FBI since 2007. Tarwater is an "investigative or law enforcement officer[]" within the meaning of 28 U.S.C. § 2680(h).

### JURISDICTION AND VENUE

24. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1346(b)(1) and 28 U.S.C. §§ 2671-2680, as Plaintiff's claim is brought pursuant to the Federal Tort Claims Act. Specifically, this action arises from wrongful acts and omissions of an employee of the United States acting within the scope of his official duties, giving rise to claims under the FTCA, which allows a cause of action for malicious prosecution against the United States, under applicable state tort law, in this case, California.

25. Venue for the FTCA claim is proper in the Central District of

6

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")

California pursuant to 28 U.S.C. § 1402(b) because the Plaintiff, Jonathan Destler, resides in this district.

26. Plaintiff filed an administrative claim with the Department of Justice (DOJ) under the FTCA pursuant 28 U.S.C. § 2675(a) on March 25, 2025. (*See* Ex. 4 (Form 95).) On May 25, 2025, DOJ confirmed receipt of the claim. More than six months elapsed without further notice from the DOJ. Accordingly, as of September 25, 2025, the FTCA claim was deemed denied and is ripe under 28 U.S.C. § 2675(a).

## FACTUAL ALLEGATIONS

### A.   Loop Industries

27. Loop is a technology company dedicated to revolutionizing the plastics industry through its proprietary and innovative depolymerization recycling process. It is headquartered in Quebec, Canada.

28. Loop was founded in 2014 by its CEO, Daniel Solomita, and has continued to grow and develop its business ever since.

29. Loop became publicly traded in 2015 through a reverse merger with First American Group Inc ("FAMG"), marking a significant milestone in its journey to bring its technology to market.

30. From November 2015 to November 2017, Loop's shares traded on the OTC markets under the symbol LLPP. Since November 20, 2017, Loop's shares have traded on the Nasdaq Global Market exchanges under the symbol "LOOP."

31. Loop's proprietary technology is based on scientific advancements in depolymerization, which enables the efficient breakdown of waste plastics into their base monomers, allowing for the production of virgin-quality recycled PET plastic. The company has secured contracts, and investment and strategic partnerships, from some of the largest brands and chemical manufacturers in the world, as well as coverage from investment banks and institutional investors.

32. Loop's main factory is located near Montreal, Canada. With regulatory

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

7

approvals, third-party validations and customer demand supporting its technology, Loop stands as a legitimate, functioning business with high potential. Loop has been a public company for a decade.

**B.     The Investigation into Loop**

33.     The FBI's investigation into Loop started with a claim by Gary Brennan ("Gary"), the son of Allan Brennan who was an early Loop investor and the so-called "victim" of the alleged scheme. Concerned that his father was making risky financial decisions that could affect his inheritance, Gary reported potential elder abuse to authorities.

34.     His concerns arose after his father developed a new acquaintance with Destler's co-defendant, Robert Lazerus ("Lazerus"), a real estate broker and consultant who helped find investment capital for various companies, including Loop. Lazerus introduced the Loop investment opportunity to Allan Brennan, a successful investor and active stock trader; subsequently, both Allan Brennan and Gary Brennan invested in Loop.

35.     Gary's report led to an SEC inquiry, which was then referred to the FBI. By late 2019, the FBI opened an investigation into Loop, one of the companies in which Allan Brennan invested. The FBI investigation was led by Special Agent Tarwater. As the lead investigator, Tarwater was responsible for directing and conducting the investigation, including procuring search warrants, interviewing witnesses, obtaining and analyzing documentary evidence, and preparing and conveying reports and other information to the prosecutors.

36.     Although no charges for elder abuse were ever pursued, the FBI—under Tarwater's leadership—zeroed in on Loop. Tarwater was particularly fixated on Loop's origins as the product of a reverse merger.

37.     In a reverse merger, a private company becomes publicly traded by merging with an existing public company that has little or no current operations—a common alternative to the IPO process for early-stage companies. Reverse mergers

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

8

are a lawful and widely utilized as a corporate finance strategy, with many well-known companies having originated through this process.

38.    In the Rule 29 hearing in the Criminal Action, the trial judge stated that "nothing about this reverse merger and maintaining control was illegal." (Ex. 1 at 5:16-17.)

39.    Nevertheless, Tarwater was fixated on Loop due to its reverse merger origin and the fact that some shares of the public entity it merged with—FAMG—were held in offshore brokerage accounts, including one account linked to Blacklight S.A., a Swiss entity indicted for securities fraud in 2020.

40.    However, neither Loop's founding members nor its original investors, including Destler, had ever heard of, much less had any involvement with Blacklight. Despite this fact, Tarwater contrived that Loop, Destler, and others were involved in a fraudulent conspiracy with Blacklight.

41.    During the investigation, Tarwater went undercover as a wealthy potential investor ("Jay Taylor"), attempting to bait Destler and Lazarus, into divulging misleading or exaggerated information about Loop. He failed, as Destler had no such information, and Tarwater knew it.

42.    It is highly unusual for the lead FBI investigator on a criminal case to also take on the role of undercover agent. The lead investigator typically supervises and directs the investigation, ensuring it aligns with FBI procedures and legal requirements. Going undercover could compromise the agent's ability to oversee the case objectively. Tarwater conceded during questioning at trial that it is indeed highly irregular for the lead investigator to take on an undercover role in his own case.

43.    At trial, Tarwater simultaneously served as the lead FBI agent, an undercover witness, and a designated expert in securities fraud—effectively wearing three hats. This unusual overlap of roles not only blurred the lines between

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")

investigator, witness and expert but also indicated bias and overzealousness.

44.     Despite his leadership role and extensive involvement in the criminal investigation, Tarwater never testified before the grand jury. Rather, Tarwater supplied information to other FBI agent(s) whom Tarwater described at trial as having little involvement in the investigation, but who did testify before the grand jury—individuals whose identities the Government never disclosed to the defense.

45.     The Government shielded Tarwater from testifying before the grand jury, despite his leadership role in the investigation, to avoid having to disclose grand jury testimony to the defense.

46.     To date, Destler has not received a copy of the grand jury transcripts, despite requesting them in discovery and during trial. It is evident from the Indictment and became clear during the trial that the Grand Jury was misled by materially inaccurate and incomplete information and representations regarding Destler, as a result of Tarwater's intentionally mishandled investigation.

47.     The investigation was riddled with lies, omissions and cherry-picked facts and innuendo. Tarwater misrepresented facts to the prosecutors to secure the Indictment and continuously altered the theories of liability as the evidence failed to support the claims.

48.     Rather than following the facts, Tarwater pursued a predetermined conclusion, deliberately manipulating and fabricating evidence to fit his narrative and sustain the baseless hypothesis of a large-scale international securities fraud scheme. When the truth emerged at trial, the prosecution was exposed as a fiction.

C.     **Destler Voluntarily Cooperated with the Feds**

49.     At all times, Destler fully cooperated with the federal investigation, demonstrating transparency and good faith—he had nothing to hide. Immediately upon learning in or around February 2022 that Destler was part of an FBI investigation into Loop, Destler, through his attorneys, reached out to the Government to cooperate and answer any questions. In October 2022, Destler,

10

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

through his attorneys, again reached out to the Government to request an in-person meeting to clear his name and answer any questions.

50.    In November 2022, Destler voluntarily sat for an interview at the U.S. Attorney's Office in San Diego, where he answered all questions posed by Tarwater and the others present. Destler also provided documents, including records of his public and private stock transactions.

51.    Destler's trading records proved that over the relevant seven-year period, from 2015 to 2022, he sold approximately two percent of his Loop shares on the public market, rendering the Government's "pump and dump" fraud theory implausible. Tarwater had the records and was fully aware of these facts. But, determined to secure a high profile white collar conviction by any means necessary, he chose to ignore and obfuscate the evidence and proceed with this malicious prosecution .

### D.    Material Lies and Fabrications

52.    On November 22, 2022, the grand jury returned an Indictment, charging Destler and his co-defendants with securities fraud and conspiracy to commit securities fraud. The crux of the Indictment was that the defendants engaged in a "pump and dump" scheme which lasted over seven years—a period of time far exceeding these types of schemes—wherein the defendants concealed their control over Loop's stock, and artificially inflated the share price so they could sell their shares at inflated prices, leaving innocent investors holding the bag.

53.    The prosecutors' presentation to the grand jury was based on information developed and supplied by Special Agent Tarwater. Acting in reliance on Tarwater's investigative reports, summaries and representations, the prosecutors conveyed materially false and misleading information to the grand jury— information that originated with Tarwater. Absent these misrepresentations, there would have been no probable cause to indict Destler.

54.    Based on the Tarwater investigation, the Indictment was founded on a

11

series of lies and fabrications as set forth below.

### (a)    Lie #1: Brennan Was a "Victim"

55.    The first falsehood in the Indictment was the claim that Allan Brennan was a "victim" of the alleged fraudulent scheme. (Ex. 2 (Indictment) ¶ 5.) At the time, Tarwater was aware that Brennan was a sophisticated investor and active trader who had profited approximately $3 million from his investment in Loop—he had Brennan's trading records. At trial, Tarwater admitted that the FBI not only possessed Brennan's trading records but had also enlisted a forensic accountant to review them.

56.    Tarwater ensured that Brennan's profits and his pedigree as an experienced stock trader and sophisticated investor were concealed from the grand jury.  Instead, the investigation falsely portrayed Brennan as  an elderly "victim." Tarwater knew that to sustain a fraud scheme, he had to present someone who was defrauded. He also knew that framing the case around a vulnerable victim who was supposedly defrauded would make it more compelling.

57.    On the brink of trial, when it became apparent that the defense would present evidence showing Brennan made a substantial profit from his Loop stock, Tarwater had the FBI scramble to find new victims, sending out letters to Loop investors in search of someone who would agree to identify themselves as a victim. They never found one. Several of the investors the FBI contacted felt pressured by the FBI to say they were "victims" when they were not.  This eleventh hour scramble to find a victim underscores that no genuine victim existed, contrary to the misrepresentations made in investigative reports and communications used to secure the Indictment and in the Indictment itself.

58.    Given that the investigation began in 2019, Tarwater had two years to interview Allan Brennan before his passing in October 2021, to confirm that he was a sophisticated investor and ascertain whether or not he was a victim. Despite having access and ample opportunity, Tarwater deliberately chose not to interview

12

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Brennan. He knew this would expose the fact that Brennan was not a victim by any measure and undermine the investigation's false narrative.

### (b)  Lie #2: Destler "Pumped" Loop Stock

59. The second falsehood in the Indictment is the claim that Destler took actions to artificially inflate Loop's stock (the "pump").

60. A fundamental element of a "pump and dump" scheme is the artificial inflation of a stock's value through false, misleading or exaggerated public statements intended to drive up the price and deceive investors. The Grand Jury and the case in its entirety were infected with the falsehood that Destler engaged in conduct to "pump up" Loop's stock so that he could sell his shares at an artificial price and make a substantial profit.

61. However, there was no evidence that Destler made a single false or misleading statement about Loop to influence investors to buy or hold onto their shares. Contrary to the Indictment's assertions, Destler did not engage in any "pumping" whatsoever. Throughout the course of his investigation, Tarwater represented that Destler had engaged in such conduct, representing that he promoted Loop through exaggerated or misleading public statements to "pump up" its stock price for personal gain.

62. Those representations were materially false, were made during the investigative phase, and were conveyed to the grand jury. Tarwater knew there was no evidence that Destler had made a single false or misleading public statement to anyone about Loop. Nonetheless, he included these false allegations in investigative reports which were relied upon in seeking the Indictment. These misrepresentations directly and foreseeably caused the grand jury to return an indictment based on fabricated grounds.

### (c)  Lie #3: Destler "Dumped" Loop Stock

63. The objective of a "pump and dump" scheme is to artificially inflate the stock price "so that individuals who control a substantial portion of the company's

stock can sell shares of that stock at artificially high prices[.]" (Ex. 2 ¶ 11.)

64. Tarwater, through his investigative "findings," misled the grand jury into believing that Destler intended to sell, or had in fact sold, his shares at inflated prices, thereby effectuating the "dump" portion of the purported "pump and dump" scheme.

65. At the time of the grand jury proceedings, Tarwater had possession of Destler's trading records and knew, for a fact, that he never sold his shares to the investing public at inflated prices. Throughout the seven-year "fraud" period alleged in the Indictment, Destler sold just over two percent of his Loop holdings in the public market, at nowhere near the peak stock price. Destler could have sold his stock anytime he wanted over many years and reaped significant profits—he chose not to. He held onto the majority his shares because he believed in the company's long-term success.

66. Had Tarwater accurately disclosed these facts in his investigative reports and briefings to prosecutors, probable cause to charge Destler would not have existed. Destler's decision to retain—rather than liquidate—his holdings is the very opposite of a "pump-and-dump" scheme.

**(d)** **Lie #4: That Destler Intentionally Misreported His Shares of Loop**

67. The Indictment devoted multiple paragraphs to allegations that Destler opened two brokerage accounts with Wilson Davis & Company, Inc., a securities broker-dealer, in which he misreported his number of Loop shares. (Ex. 2 ¶ 31(c).) The Indictment claimed that Destler reported he owned 1,300,000 shares, when he allegedly owned 1,800,000 shares—misrepresenting his ownership as 4.4% of outstanding shares, rather than 6.1%. (*Id*.) Because ownership of 5% or more outstanding shares triggers reporting requirements, the Government seized upon this as evidence of Destler's guilt in the alleged scheme.

68. This was false. Throughout their investigation, prior to the grand jury,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")

Tarwater had copies of all of Destler's trading and stock sales records, reflecting both public and private transactions. These trading records showed that before Destler submitted the Wilson-Davis application, he sold a significant number of his shares in private transactions, before Loop was public, which brought his shares under the 5% threshold. At trial, Tarwater admitted that he failed to account for these private sales when calculating Destler's shares of Loop at the time he signed the Wilson-Davis application.

69.     Tarwater knew and, at the very least, should have known based on the trading records and Destler's statements during his interview, that Destler's shares amounted to less than 5% at the time he filled out the application. He intentionally hid this fact from the prosecutors and from the grand jury to mislead them into believing Destler intentionally under-reported his shares.

70.     Further, Destler's brokerage account application was private and never publicly disseminated, meaning any statements within it had no impact on the investing public. As a result, and as a matter of law, it was entirely irrelevant to any alleged securities fraud scheme.

71.     Through Tarwater's misleading investigation, the grand jury was led to believe that this alleged misstatement was in the public purview—otherwise it would have no relevance to the Indictment or the alleged securities fraud scheme.

72.     In dismissing the Criminal Action against Destler, the Judge stated: "I just don't think this [referring to the Wilson Davis application] provides evidence that Mr. Destler concealed anything from regulators, investors, or anyone else." (Ex. 1 at 7:20-22.)

**(e)     Lie #5: That Destler Conspired to Defraud Investors**

73.     The Indictment devotes many paragraphs to framing Loop's origins as suspicious because, despite being a Nasdaq listed company since 2017, it originally became public via a reverse merger. The Indictment specifically alleges that "in 2015, defendants STEPHENS, DANKS and DESTLER collectively arranged a

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE FEDERAL TORT CLAIMS ACT ("FTCA")

reverse merger of FAMG with Loop Holdings, thereby creating Loop" as part of the conspiracy. (Ex. 2 ¶ 22.)

74. It is black letter law that a conspiracy requires an "agreement" to commit a criminal act between at least two co-conspirators.

75. The Indictment alleged that Destler conspired (i.e., made an agreement) with the individuals involved in the public shell company—FAMG—to engineer a reverse merger for the purpose of committing securities fraud.

76. However, the Government never presented evidence that Destler entered into an agreement with the individuals involved with FAMG. The Government's key witness regarding the merger of Loop with FAMG and the alleged underlying conspiracy—Steven Bajic—testified at trial that he never met or communicated with Destler.

77. Tarwater again presented false information—that Destler had entered into an agreement with individuals involved in FAMG during the merger with Loop to commit securities fraud. Tarwater made these representations despite his knowledge that Destler had never met or even communicated with Bajic.

E. **The Full Extent of the Misrepresentations Became Clear at Trial**

78. The full scope of Tarwater's misrepresentations throughout the course of the investigation was exposed during trial.

79. Despite Destler's attorneys' repeated requests to receive copies of the grand jury transcripts, the Government refused to disclose them.

80. It was not until trial, when the evidence—or lack thereof—was tested in court that the full breadth of Tarwater's deception and misconduct became clear.

81. The criminal trial against Destler and co-defendants Danks and Lazerus commenced on July 30, 2024, and lasted until August 22, 2024.

82. The trial confirmed that the FBI had possession of Destler's stock trading records. These records proved that Destler never engaged in a dump of Loop stock—he sold approximately 2% of his shares over a seven-year period on the

16

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

public market despite having ample opportunity to sell anytime and reap significant profits.

83.    The Government called Jason Carter, a stockbroker from Wilson-Davis who handled Destler's account, with decades of experience in the securities industry, to testify. Before trial, Tarwater and the FBI contacted Carter multiple times to discuss his testimony. During one of these calls, Carter was asked whether Loop was a "pump and dump" scheme. He responded unequivocally, "No."

84.    Tarwater tried to walk Carter back from this statement, but Carter held firm and explained why, based on his extensive experience in the securities industry Loop was not a "pump and dump." Shortly thereafter, Carter was informed that he would not be allowed to testify in this regard if questioned at trial. Tarwater thereby sought to suppress exculpatory evidence and intimidate a material witness.

### F.    Tarwater Has Misrepresented Material Facts Before

85.    Tarwater has demonstrated a pattern of deception as evidenced by his conduct in the 2013 prosecution of Dwight C. Brunoehler.

86.    Brunoehler was indicted on an alleged "pump and dump" scheme. To obtain evidence, the government used a wiretap. Tarwater was the affiant on one of the wiretap applications. To establish necessity for the wiretap, Tarwater stated in his affidavit that all normal investigative procedures had been tried and failed. This statement was false.

87.    During a hearing on the wiretap, Tarwater admitted that he knew information in the affidavit that he signed was false, misleading and omitted key facts. The trial judge stated that he believed Tarwater had been deceptive, and the Government dismissed all the charges.

### CAUSE OF ACTION

(*Malicious Prosecution Under The Federal Tort Claims Act ("FTCA")*)

88.    Plaintiff incorporates all preceding paragraphs as if fully set forth

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

herein.

89.   Under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), the United States is liable for the tortious acts of federal employees acting within the scope of their employment to the same extent as a private individual under California law. Under California law, a claim for malicious prosecution requires:

(a) The initiation or continuation of a criminal proceeding by the defendant;

(b) The proceeding was brought without probable cause;

(c) The proceeding was initiated with malice; and

(d) The proceeding terminated in favor of the plaintiff.

90.   FBI Special Agent Tarwater, acting within the scope of his employment, engaged in conduct constituting malicious prosecution under California law by knowingly providing false and misleading information in order to obtain an indictment against Destler and cause him to be criminally prosecuted.

91.   Defendant (the United States) and its agents did not have probable cause to believe that Destler was guilty of securities fraud.  Defendant and its agents knew when they presented their investigation to the Grand Jury that it was based on lies and fabrications and that probable cause was therefore non-existent.

92.   The criminal prosecution against Destler lacked probable cause because it was based on false statements and misrepresentations. Specifically, it falsely alleged the following:

a.   An elderly investor was a victim who suffered harm, when in fact, he realized millions of dollars in profit from his Loop investments and was a highly experienced and sophisticated investor.

b.   Destler artificially inflated Loop's stock price through "pumping," despite the absence of evidence that Destler made any false statements, material omissions, or unlawfully passed on inside information to anyone and the fact that he was in no position to do so.

c.   Destler's intent was to "dump" Loop stock when its value reached an artificially high price, despite financial records

18

confirming that he did not sell his shares in a manner even remotely consistent with such a scheme.

d.  Destler intentionally misreported his holdings in Loop stock to his broker to avoid disclosure that his ownership amounted to 5% or more, when in fact private sales of his Loop stock confirm that he was accurate in his reporting.

e.  Destler conspired with others to commit securities fraud in connection with the merger of Loop into FAMG, despite knowing that the government's conspiracy witness had never met, interacted or communicated with Destler.

93.  Tarwater intentionally or recklessly with deliberate indifference and malice, misrepresented material facts to secure the Indictment and pursue the Criminal Action against Destler. Had Tarwater been truthful and accurate in his representations and in his investigative reports, findings, and communications, there would have been no probable cause and no Indictment.

94.  Tarwater acted with malice, intending to cause Destler harm, or at a minimum, acted with reckless disregard for the truth. He manipulated the truth and fabricated evidence against Destler to secure a high-profile securities conviction to advance his own career.

95.  On December 2, 2024, the criminal case against Destler was dismissed, terminating the prosecution in Destler's favor. Destler's cause of action for malicious prosecution accrued upon the dismissal of the criminal case. (*See* Ex. 3 (Judgment of Dismissal).)

96.  On July 8, 2025, the SEC case against Destler was dismissed.  (*See* Ex. 5 (SEC Voluntary Dismissal).)

97.  As a direct and proximate result of the malicious prosecution, Plaintiff Destler suffered damages in excess of $50 million including but not limited to: financial losses; reputational harm; and severe emotional distress, according to proof at trial.

19

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jonathan Destler respectfully prays for judgment as follows:

(1)     Compensatory damages in excess of $50 million, or an amount to be determined at trial, emotional distress, lost income, legal expenses, and reputational harm;

(2)     Attorneys' fees and costs;

(3)     Any other relief the Court deems just and proper.

DATED:  November 25, 2025          MILLER BARONDESS, LLP

By:   _____
            LOUIS R. MILLER
            Attorneys for Plaintiff
            JONATHAN DESTLER

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

COMPLAINT FOR MALICIOUS PROSECUTION PURSUANT TO THE
FEDERAL TORT CLAIMS ACT ("FTCA")